UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HILDA M CASTANEDO ESCALON, *et al.*, | § § § § § | |
| Plaintiffs, | § § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-00659 |
| TRAFIGURA TRADING LLC, *et al.*, | § § § | |
| Defendants. | § | |

# ORDER

Before the Court are two motions and a supplement to said motions: Defendant Trafigura Trading, LCC's Motion to Dismiss (Doc. #17), Plaintiffs' Response (Doc. #28), Defendant Trafigura Trading, LCC's Reply (Doc. #31), Defendant Trafigura PTE LTD and Defendant Trafigura Group PTE LTD's Motion to Dismiss (Doc. #26, Ex. 1), Plaintiffs' Response (Doc. #33), Defendant Trafigura PTE LTD and Defendant Trafigura Group PTE LTD's Reply (Doc. #39), all three Defendants' combined Supplement to both Motions to Dismiss (Doc. #46), and Plaintiffs' Response to the Supplement (Doc. #47). Having reviewed the parties' arguments and applicable law, the Court grants both Motions to Dismiss.

**I.    Background**

In 1996, "Congress responded to Fidel Castro's widespread confiscation of property in Cuba by enacting the Helms-Burton Act," also known as the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act (the "Act"). *Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 333 (5th Cir. 2021), cert. denied, 142 S. Ct. 863 (2022) (citing 22 U.S.C. § 6021 *et seq.*). Title III of the Act "allows any United States national with a claim to property confiscated by the Cuban Government to sue any person who traffics in such property." *Id.* (citing 22 U.S.C. § 6082(a)(1)(A)).

The Estate of Hilda Castanedo ("Castanedo Estate") and the Estate of Emma Diaz ("Diaz Estate" and collectively, "Plaintiffs" or the "Estates") bring this lawsuit through their shared personal representative, Hilda M. Castanedo Escalon ("Escalon"),[1] against Defendants Trafigura Trading, LLC ("Trafigura US"), Trafigura Pte Limited ("Trafigura Trader"), and Trafigura Group Pte Limited ("Trafigura Parent" and collectively, "Defendants") for their alleged trafficking in Plaintiffs' property in violation of the Act. Doc. #1. Plaintiffs allege that in 1960, the Castro regime seized a large Cuban lead and zinc mining operation owned by Minas de Matahambre, S.A. (the "Company"), as well as the Company's assets and an affiliated company called Compañia Operadora Rometales, S.A (collectively, the "Confiscated Property"). *Id.* ¶¶ 2, 24. Hilda Castenado and Emma Diaz (the "Decedents") had stock ownership and inherited ownership interests in the Confiscated Property through their father, who died in 1962. *Id.* ¶¶ 24, 28, 60.

Diaz passed away on July 27, 1996, followed by Castenado on June 6, 2000. *Id.*, Ex. 1 at 4 ¶ 2 and Ex. 2 at 4 ¶ 2. The Decedents' wills state that apart from funeral expenses and a list disposing of certain tangible personal property, both of the Decedents' estates at the time of their deaths are given and bequeathed to Escalon, who is Castenado's daughter and Diaz's niece. *Id.*, Ex. 1 at 7 and Ex. 2 at 7. In August 2020, Escalon had both wills admitted to probate in Miami, Florida. *Id.*, Ex. 1 at 12–13 and Ex. 2 at 12–13.

Herein, Plaintiffs allege that Defendants are in a partnership with the Cuban government, through which Defendants "profit from the exploration, extraction, and exportation of minerals, such as lead and zinc, from the Confiscated Property, which [Defendants] use to supply customers worldwide and to support their commodities trading activities." Doc. #1 ¶ 6. "[N]either Defendants nor the Cuban government has ever obtained authorization from, or paid compensation

---

[1] Escalon brings this lawsuit "in her capacity as the personal representative of the" Castenado Estate and Diaz Estate. Doc. #1 at 1. As such, Escalon is not an individual plaintiff in this case.

2

to, the rightful owners" of the Confiscated Property. *Id.* Based on this conduct, Plaintiffs assert claims for trafficking in confiscated property in violation of the Act, as well as civil conspiracy to do the same. *Id.* at 19, 20. Defendants now move to dismiss all claims made against them. Doc. #17 and Doc. #26, Ex. 1.

## II.   Legal Standards

A district court must dismiss a case when the plaintiff fails to establish subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When a party files multiple Rule 12 motions, [courts] must consider the Rule 12(b)(1) jurisdictional attack before considering the Rule 12(b)(6) merits challenge. The party responding to the 12(b)(1) motion bears the burden of proof that subject-matter jurisdiction exists." *Wilson v. Houston Cmty. Coll. Sys.*, 955 F.3d 490, 494–95 (5th Cir. 2020). If the movant "submits affidavits, testimony, or other evidentiary materials," he has made a "factual attack" on the court's subject matter jurisdiction. *Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 264 (5th Cir. 2020). Absent such evidence, the movant has made a "facial attack," pursuant to which a court must determine whether the plaintiff's complaint sufficiently alleges a basis for subject matter jurisdiction. *Id.* at 263. For a facial attack, "the allegations in [the] complaint are taken as true." *Id.*

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). This standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating the complaint, the court takes "the well-pleaded factual allegations in the complaint as true" but does "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

### III. Analysis

#### a. Article III Standing

In both Motions to Dismiss, Defendants first argue that the claims asserted against them must be dismissed for lack of subject matter jurisdiction because Plaintiffs have failed to allege an injury in fact, as is required for Article III standing. Doc. #17 at 15–17 and Doc. #26, Ex. 1 at 13–14. Defendant Trafigura US also argues that Plaintiffs have failed to allege traceability. Doc. #17 at 17. "Article III standing has three elements: injury-in-fact, traceability, and redressability." *Glen*, 7 F.4th at 334. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* A Title III plaintiff's allegation that she has an interest in confiscated properties and was harmed by the defendant trafficking in said properties is sufficient to satisfy the injury-in-fact requirement. *Id.* at 334–35. "To show traceability, a plaintiff must allege that her injury is connected with the conduct about which she complains." *Id.* at 335 (cleaned up). In the context of a Title III claim, traceability is established if the plaintiff alleges that the defendant was unjustly enriched by doing business with entities that now occupy the properties wrongfully taken from the plaintiff. *Id.* at 336.

Here, Plaintiffs allege that: (1) they have stock ownership and inherited ownership interests in the Confiscated Property; (2) "[t]hrough their partnership with the Cuban government, Defendants profit from the exploration, extraction, and exportation of minerals, such as lead and zinc, from the Confiscated Property, which they use to supply customers worldwide and to support their commodities trading activities"; and (3) "[n]otwithstanding their ongoing and substantial profits from the Confiscated Property, neither Defendants nor the Cuban government has ever obtained authorization from, or paid compensation to, the rightful owners." Doc. #1 ¶¶ 24, 6.

4

These allegations are sufficient to meet the injury-in-fact and traceability requirements for Article III standing. *See Glen*, 7 F.4th at 334–36.

As such, Defendants' Motions are denied as to lack of subject matter jurisdiction.[2]

b.  **Title III Claims**

Defendants also argue that the Title III claims asserted against them must be dismissed because any property interests Decedents had to the Confiscated Property vested in Escalon upon their deaths and are therefore no longer owned by Plaintiffs. Doc. #17 at 18 and Doc. #26, Ex. 1 at 20. Defendants further argue that Plaintiffs did not timely acquire said property interests, which precludes them from bringing a Title III claim. *Id.* Under Florida law, "[t]he death of the testator is the event that vests the right to devises unless the testator in the will has provided that some other event must happen before a devise vests." Fla. Stat. § 732.514. "The intention of the testator as expressed in the will controls the legal effect of the testator's dispositions. . . . [A] will is construed to pass all property which the testator owns at death." *Id.* § 732.6005. Additionally, if the property giving rise to a Title III claim "was confiscated before March 12, 1996, a United States national may not bring an action under the Act unless [said person] acquired ownership of the claim before March 12, 1996." *Glen*, 7 F. 4th at 333 (citing 22 U.S.C. § 6082(a)(4)(B)).

---

[2] Defendant Trafigura Trader and Defendant Trafigura Parent also move to dismiss for lack of personal jurisdiction, arguing that any contacts Defendant Trafigura US has in the United States cannot be imputed to them as two separate foreign corporations. Doc. #26, Ex. 1 at 15–20. Plaintiffs respond in part that: (1) Defendants all function as one "consolidated group," (2) Trafigura US, a wholly owned subsidiary of Trafigura Parent, acts as Defendants' agent in the United States, and (3) Defendants "knew their Cuban operations might violate U.S. law, so they tried to create a jurisdictional shield by re-domesticating Trafigura US in the same month that they executed the joint venture agreement with the Cuban Government." Doc. #33 at 15, 17–18. If necessary, Plaintiffs request expedited jurisdictional discovery on the issue of personal jurisdiction, to which Trafigura Trader and Trafigura Parent request leave to submit supplemental briefing. Doc. #33 at 18 and Doc. #39 at 9. Though the Court recognizes that additional briefing and discovery would assist in resolving this issue, such briefing is not necessary, as Plaintiffs' claims fail on the merits and cannot be remedied by amendment.

Applying Florida probate law, if a decedent passes away after March 12, 1996, that decedent's estate has not timely acquired a Title III claim. *Fernandez v. Seaboard Marine, Ltd.*, No. 20-CV-25176, 2021 WL 4902506, at *5 (S.D. Fla. Oct. 21, 2021) (denying motion to reconsider order dismissing Title III claims brought by four estates whose decedents died after 1996).

Here, it is undisputed that Decedents "acquired ownership of their claims to the Confiscated Property prior to 1996." Doc. #1 ¶ 59. At issue is whether these claims were transferred to Escalon upon their deaths, or timely and "lawfully retained" by Plaintiffs. *See id.* Decedents' wills were executed and admitted to probate in Florida. Doc. #1, Ex. 1 at 7, 13 and Ex. 2 at 7, 13. Diaz's will states "all the rest, residue, and remainder of my estate, real or personal, wheresoever situated, now owned or hereafter acquired by me, which at the time of my death shall belong to me or be subject to disposal by my Will, I give and bequeath unto my niece, Hilda M. Castanedo Escalon." *Id.*, Ex. 1 at 7. Castenado's will contains identical language with the exception of the word "daughter" instead of "niece." *Id.*, Ex. 2 at 7. Neither will makes any mention of an event that must occur before their terms vest. *See id.* Therefore, any rights Decedents had to the Confiscated Property vested in Escalon on the dates of their deaths: July 27, 1996 and June 6, 2000, respectively. *Id.*, Ex. 1 at 4 ¶ 2 and Ex. 2 at 4 ¶ 2; Fla. Stat. § 732.514. When Decedents' wills were probated does not affect when Escalon's right to the Confiscated Property vested. *See Rice v. Greene*, 941 So. 2d 1230, 1231 (Fla. Dist. Ct. App. 2006). Because Escalon's right to the Confiscated Property vested upon Decedents' deaths, Plaintiffs no longer have an ownership interest in the Confiscated Property.

But even if this were not the case, Title III claims for property confiscated before March 12, 1996 can only be brought a "United States National" who "acquires ownership of the claim before March 12, 1996." 22 U.S.C. § 6082(a)(4)(B). Because the Decedents passed away after March 12, 1996, "their purported claims to the Confiscated Property were not part of their

6

respective Estates before the statutory cutoff." *Fernandez*, 2021 WL 4902506, at *5. As such, "the Estates cannot maintain a cause of action under Title III." *Id.*

Accordingly, Defendants' Motions are granted as to violations of the Act.

### c. Civil Conspiracy

Finally, Defendants also move to dismiss Plaintiffs' claim for civil conspiracy. Doc. #17 at 27 and Doc. #26, Ex. 1 at 28. The parties dispute whether a claim for civil conspiracy can be based on an underlying statutory violation, such as a violation of the Act, or must be based on an underlying tort. Doc. #17 at 28 and Doc. #28 at 28. The Court need not resolve this dispute because Plaintiffs have failed to state a claim for violations of the Act, which is the only underlying claim Plaintiffs assert.

Accordingly, Defendants' Motions are granted as to Plaintiffs' claim for civil conspiracy.

## IV. Conclusion

For the foregoing reasons, the Court finds that Plaintiffs have Article III standing under the Act. However, because any ownership interests Decedents had in the Confiscated Property either vested in Escalon upon Decedents' deaths or were acquired by Plaintiffs after March 12, 1996, Plaintiffs cannot assert a Title III claim under the Act. Without an underlying claim, Plaintiffs' claim for civil conspiracy fails as well. Accordingly, Defendants' Motions are hereby GRANTED and this case is DISMISSED.[3]

It is so ORDERED.

MAR 1 5 2022
Date

The Honorable Alfred H. Bennett
United States District Judge

---

[3] Additionally, because the Court did not consider the declaration of Dan Peters in resolving the Motions, Plaintiffs' Motion to Strike Declaration of Dan Peters (Doc. #32) is hereby DENIED as MOOT.

7