UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HILDA M. CASTANEDO ESCALON, § <br> AS PERSONAL REPRESENTATIVE § <br> OF THE ESTATE OF HILDA CASTANEDO § <br> AND THE ESTATE OF EMMA DIAZ, § <br> § <br> *Plaintiffs*, § <br> § <br> v. § <br> § <br> TRAFIGURA TRADING, LLC, *et al.*, § <br> § <br> *Defendants*. § | Civil Action No. 4:21-cv-00659 |

**PLAINTIFFS' MOTION TO RECONSIDER ORDER
GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Pursuant to Fed. R. Civ. P. 59(e) and 60(b)(6), Plaintiff Hilda M. Castanedo Escalon ("Personal Representative"), as the personal representative of the Estate of Hilda Castanedo and the Estate of Emma Diaz (collectively, "Plaintiffs"), respectfully submits this Motion to Reconsider this Court's Order of March 15, 2022, granting Defendants' motions to dismiss the Complaint pursuant to Fed. R Civ. P. 12(b).  *See* Dkt. 49 ("Order").  In the Order, this Court found that Plaintiffs have Article III standing but that their claims are barred because the decedents in this case passed away after March 12, 1996.  Order at ECF Page 6.

The Court found dismissal was warranted for two reasons.  First, the Court cited the terms of the decedents' wills, finding that "any rights Decedents had to the Confiscated Property vested in [the Personal Representative] Escalon on the dates of their deaths: July 27, 1996 and June 6, 2000, respectively."  Order at ECF Page 6.  Plaintiffs respectfully suggest that the interpretation of the legal impact of the wills should be in accord with the Florida probate court orders admitting

1

those wills to probate, both of which authorize the personal representative to pursue the Title III claims as assets of the estates. This would not have been possible if the claims had immediately vested in the Personal Representative and were no longer part of the estates.

The Court also relied on another district court's decision in *Fernandez v. Seaboard Marine, Ltd.*, No. 20-CV-25176, 2021 WL 4902506 (S.D. Fla. Oct. 21, 2021). This decision was issued months after the parties completed their briefing and was not addressed by either party in any supplemental briefing to the Court. It raises several issues, and Plaintiffs respectfully request the opportunity to bring those issues to the Court's attention here. Specifically, the decision incorrectly construes Florida probate law to require dismissal of Title III claims on the ground that the original claim holders passed away after March 12, 1996, the relevant date for assessment of claim ownership under Title III. *See* 22 U.S.C. § 6082(a)(4). And it effectively penalizes claim holders simply because they happened to pass away between March 12, 1996 (the relevant date) and May 2, 2019 (the date when private actions were permitted by the Executive Branch).

As explained in detail below, Plaintiffs respectfully request that the Court reconsider its Order and deny Defendants' motions to dismiss on these grounds.

**I.      Legal Standard**

A motion to alter or amend an order may be filed within 28 days after the entry of judgment or within a reasonable time when seeking relief from a judgment. Fed. R. Civ. P. 59(e) and 60(b)(6). Amending a judgment is appropriate under Rule 59(e): "'(1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact.'" *Berezowsky v. Rendon Ojeda*, 652 F. App'x 249, 251 (5th Cir. 2016) (quoting *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012)). Other courts have found a manifest error of law exists where a federal court misinterprets existing case law addressing a Florida state statute. *See*

*Rosen v. J.M. Auto, Inc.*, 270 F.R.D. 675, 687 (S.D. Fla. 2009) ("Having again reviewed the case law from the Florida District Courts of Appeal and our own Court regarding the need to show reliance in a FDUTPA claim, we find that our previous Order was in error."); *Rogers v. United States*, No. 14-21474-CIV, 2016 WL 4805920, at *4 (S.D. Fla. Feb. 24, 2016) (granting a motion for reconsideration based on the court's misapprehension of Florida's uninsured motorist statute).

## II. Argument

### A. The Florida probate court authorized the personal representative to pursue the Title III claims on behalf of the estates.

The first reason for dismissal was based on Defendants' argument that the Title III claims immediately vested in the Personal Representative as the beneficiary of the decedents' wills. In making this argument, however, Defendants ignored the orders of the Florida probate court authorizing the Personal Representative to pursue the Title III claims on behalf of the estates.

On July 8, 2020, the Personal Representative filed petitions for administration of the estates of Hilda Castanedo ("Hilda") and Emma Diaz ("Emma"). Dkt. 1-1, ECF Pages 4-5 of 13 (Emma); Dkt. 1-2, ECF Pages 4-5 of 13 (Hilda). The only asset listed for each estate was the following:

> Right to pursue a cause of action pursuant to the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act, 22 U.S.C. Section 6021, et seq. (the "Act") on property and rights confiscated (the "Confiscated Property") to decedent … and to her father Waldo Pascual Diaz y Martinez by the Cuban Government without authorization by or compensation paid to their rightful owners ….

*Id.* The Florida probate court entered orders admitting both wills to probate and appointing the Personal Representative for both estates. Dkt. 1-1, ECF Pages 12-13 of 13; Dkt. 1-2, ECF Pages 12-13 of 13. Among other things, this means that the Personal Representative was, and is, authorized to pursue those Title III claims on behalf of the estates. *See* Fla. Stat. § 733.612(20).

The Order is contrary to the Florida probate court's orders. The latter authorize the Personal Representative to pursue Title III claims on behalf of the estates, while the former

concludes that the estates have no such claims. Where, as here, a state court has ruled on an issue of state probate law, that ruling is entitled to deference. *See Trent v. Nat'l City Bank of Indiana*, 145 F. App'x 896, 898 (5th Cir. 2005) (stating that "the federal court 'has no jurisdiction to probate a will or administer an estate.'" (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946))). Deference to the Florida probate court is particularly appropriate in this case because Defendants did not challenge the propriety of the probate court's orders. *See* Motion to Dismiss, Dkt. 17, ECF Page 18 of 30 (arguing for immediate vesting but not challenging probate court orders); Motion to Dismiss, Dkt. 24, ECF Page 16 of 20 (same). The only assets listed for the estates were their Title III claims, making it abundantly clear to Defendants that those claims had not been transferred out of the estates as far as the state probate court was concerned. If Defendants thought the probate court erred by authorizing probate of assets that actually were not part of the estates, they would have said so, but they did not.

This is not to say that the Personal Representative's interest as the beneficiary of the wills of Hilda and Emma was somehow overridden by the Florida probate courts orders. On this point, *Rice v. Green* is instructive. In that case, the Florida court distinguished between legal and equitable title to a decedent's property, finding that the decedent's wife "lacked marketable title to the property" because the will was never offered for probate. 941 So.2d 1230, 1231 (Fla. Dist. Ct. App. 2006). Although the wife held "equitable title to the property," that property was still subject to the administration of the estate. *Id.* So too here. Even if the Personal Representative was immediately vested with the equitable title to the Title III claims, she did not, and could not, hold the legal title because those claims remained subject to the administration of the estates. The better conclusion is that the estates continue to hold the legal title to the Title III claims, which can be

pursued by the Personal Representative in accordance with the Florida probate court's orders and Florida probate law.

### B. The *Fernandez* decision was wrongly decided and does not support dismissal of the estates' Title III claims.

The second reason for dismissal was based on the Southern District of Florida's decision in the case of *Fernandez v. Seaboard Marine, Ltd.* Because that decision post-dated the briefing in this case, Plaintiff did not have an opportunity to address it and now offers the following reasons why it was wrongly decided.

#### 1. *Fernandez* is wrong because the estate *is* the decedent's property; it does not *acquire* the decedent's property.

*Fernandez* rests primarily on the conclusion that, at death, the decedent's Title III claim is acquired by the decedent's estate at death. *Fernandez*, 2021 WL 4902506, at *5 ("Indeed, upon the death of each of the Blanco Rosell Siblings, their purported claims to the Confiscated Property 'became an asset of [their] [Estates].'" (citation omitted)). Under this reasoning, if death occurs after the March 12, 1996 relevant date of the Helms-Burton Act ("HBA"), the estate cannot bring the claim because it "acquired" the claim too late. But this is an incorrect interpretation of the relationship between the estate and the decedent's property under Florida probate law.

*Fernandez* misconstrues what the estate is under Florida law. The estate is defined as follows: "Estate means the property of a decedent that is the subject of administration." Fla. Stat. § 731.201(14); *see also Wilkes v. United States*, No. 3:97-CV-1317-J-21A, 2000 WL 1367885, at *7 (M.D. Fla. Oct. 18, 2000) (describing estates as "merely the sum total of a deceased person's property" (quotation omitted)). Logically, if the estate *is* the property of the decedent, it cannot *acquire* that property. *See* Fla. Stat. § 731.201(14); *see also* 33 C.J.S. Executors and Administrators § 5 ("The 'estate' of a deceased person is not a legal entity but is merely a name indicating the sum total of the decedent's assets and liabilities"). Similarly, the estate cannot

5

distribute property, which is why Florida probate law authorizes the personal representative to "[s]atisfy and settle claims and distribute the estate as provided in this code." Fla. Stat. § 733.612(24); *see also All Children's Hosp., Inc. v. Owens*, 754 So. 2d 802, 806 (Fla. Dist. Ct. App. 2000) ("It is the general duty of the personal representative to settle and distribute the estate."). Simply put, the estate does not acquire the decedent's property, nor does it distribute the decedent's property, because it *is* the decedent's property. *Fernandez's* holding cannot be squared with the legal nature of the estate.

### 2. *Fernandez* is wrong because it prevents the personal representative from bringing claims as authorized by Florida law.

*Fernandez's* misapprehension of the term "estate" under Florida law also creates a conflict with the duty of the Personal Representative to prosecute the decedents' claims. "Under Florida law, 'it is well-settled that 'an 'Estate' is not an entity that can be a party to litigation. It is the personal representative of the estate, in a representative capacity, that is the proper party.'" *United States v. Est. of Schoenfeld*, 344 F. Supp. 3d 1354, 1367 (M.D. Fla. 2018) (quoting *Spradley v. Spradley*, 213 So.3d 1042, 1045 (Fla. 2d DCA 2017)). Accordingly, the Personal Representative "may properly … [p]rosecute or defend claims or proceedings in any jurisdiction for the protection of the estate, of the decedent's property, and of the personal representative." Fla. Stat. § 733.612(20).

It is undisputed that Hilda and Emma timely acquired their Title III claims, which means that the personal representative is authorized to bring those claims because the claims are included in the estates. *Fernandez* prevents this straightforward application of Florida probate law by treating the estate as the party that acquired the Title III claim. This is contrary to Florida law, which makes clear that the estate includes "causes of action the decedent had at the time of death." Fla. Stat. § 731.201(32). Those causes of action are "subject to the strength and weakness *of the*

*decedent's cause of action had [they] survived.*" *Levy v. Baptist Hosp. of Miami, Inc.*, 210 So. 2d 730, 731 (Fla. 3d DCA 1968) (emphasis added). Had Hilda and Emma survived, the strength of their causes of action would be measured by the date they acquired their claims, which was before March 12, 1996. In other words, because Hilda and Emma timely acquired their claims, the Personal Representative is authorized to pursue those claims on behalf of their estates, and timeliness is no more of a defense against the Personal Representative than it would have been against Hilda and Emma if they had survived long enough to bring those claims.

### 3. *Fernandez* is wrong because it misconstrues Florida case law.

*Fernandez* reaches its erroneous conclusion by relying principally on *Depriest v. Greeson*, 213 So. 3d 1022, 1025 (Fla. 1st DCA 2017), and *Sharps v. Sharps*, 214 So. 2d 492, 495 (Fla. 3d DCA 1968). *See* 2021 WL 4902506, at *1. Both cases use the colorful phrase "in the twinkling of a legal eye" to describe how a decedent's property comes to be considered an asset of the estate. *Id.* at *4. But this does not answer the question of whether the estate *acquires* that property, or rather, *is* that property.

*Sharps* and other decisions repeating the "twinkling eye" analogy inartfully use phrases like "a deceased's assets become property of their estate," leaving the impression that an estate is a legal entity that can acquire assets. But it is not and cannot. *See supra* at 5-6; *see also* 31 Am. Jur. 2d Executors and Administrators § 1141 ("[E]states are not natural or artificial persons."); *Spradley v. Spradley*, 213 So. 3d 1042 (Fla. 2d DCA 2017) ("[A]n 'Estate' is not an entity that can be a party to litigation. It is the personal representative of the estate, in a representative capacity, that is the proper party."). The unambiguous statutory language in Fla. Stat. § 731.201(14), which defines an estate as the deceased's property subject to administration, makes clear that the phrases used by the courts are just a short-hand way of saying that the deceased's property (*i.e.*, the estate) has become subject to probate administration.

7

Indeed, the estate in *Sharps* did not actually acquire anything. In *Sharps*, the wife of a decedent deposited a check made payable to her husband in their joint account one day after he died. To analyze whether the check was a gift, it was important for the *Sharps* court to identify that the yet uncashed check payable solely to the husband was still the husband's property after he died. And in that context, the court remarked that "[u]pon his death, in the twinkling of a legal eye, that check became an asset of the husband's estate." *Sharps*, 214 So. 2d at 495. But the legal eye that twinkled did not create a separate legal entity called an "estate" capable of acquiring assets. The *Sharps* court simply used the phrase to explain that, upon the husband's death, the uncashed check did not suddenly belong to his wife, his heirs, or any other individual. Rather, the uncashed check remained the decedent's property and was subject to probate administration, which the court in 1968[1] referred to as his estate. The twinkle was simply the change in legal terminology used to describe the property of a living person (his individual property) versus that same person's property after the person dies.

Similarly, the court in *Depriest v. Greeson*, 213 So. 3d 1022 (Fla. 1st DCA 2017), seized on the twinkling eye analogy from *Sharps* in another context. In *Depriest*, the daughter of a deceased father got into a car accident while driving her father's car after he died but before the personal representative of his estate was appointed. The injured plaintiffs sued the personal

---

[1] The history of Section 731.201 plainly shows the first iteration of the Section was enacted in 1974:

> S. 1, ch. **74-106**; s. 4, ch. 75-220; s. 1, ch. 77-174; s. 2, ch. 85-79; s. 66, ch. 87-226; s. 1, ch. 88-340; s. 7, ch. 93-257; s. 6, ch. 95-401; s. 949, ch. 97-102; s. 52, ch. 98-421; s. 11, ch. 2001-226; s. 106, ch. 2002-1; s. 2, ch. 2003-154; s. 2, ch. 2005-108; s. 29, ch. 2006-217, eff. July 1, 2007; s. 3, ch. 2007-74, eff. July 1, 2007; s. 1, ch. 2009-115, eff. July 1, 2009; s. 4, ch. 2010-132, eff. Oct. 1, 2010; s. 1, ch. 2012-109, eff. July 1, 2012; s. 16, ch. 2013-172, eff. Oct. 1, 2013; s. 30, ch. 2019-71, effective January 1, 2020; s. 2, ch. 2020-67, effective October 1, 2020.

Fla. Stat. § 731.201 (emphasis added). Thus, the *Sharps* court was not opining on the definition of "estate" under the current statute.

representative of the decedent's estate (which was opened a few days after the accident). The question presented was whether the personal representative was liable for the damages caused by the decedent's daughter in that gap between the death and the appointment of a personal representative. The plaintiffs argued that the personal representative impliedly consented to allow the daughter to use the car, but the appellate court disagreed, reasoning that a personal representative has no duty to act prior to his appointment. *Id*. at 1027. In that context, the *Depriest* court discussed who owned the car at the time of the accident, concluding that "it did not belong to anyone individually" but instead belonged to the estate. *Id*. at 1025.

Citing *Sharps*, the *Depriest* court explained the car became an asset of the estate "in the twinkling of a legal eye" when the decedent died. *Id*. Yet again, however, the legal eye that twinkled did not create a legal entity capable of acquiring property because, as discussed above, an estate is not a legal entity capable of acquiring property. *See also* Fla. Stat. § 731.201(14); 31 Am. Jur. 2d Executors and Administrators § 1141. The *Depriest* court's phrase that the car became an asset of the estate was just a short-hand way of saying that the car was property of the deceased person subject to probate administration. Indeed, the *Depriest* court even cited the modern Florida Probate Code, Fla. Stat § 731.201(14), to explain that the estate is "*the property of a decedent* that is subject to administration." 213 So. 3d at 1025-26 (emphasis added).

In sum, the *Fernandez* decision makes three significant errors and, therefore, does not support dismissal of the Title III claims in this case.

### III. Conclusion

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion for Reconsideration and issue a revised order (i) reconsidering Defendants' arguments that the Plaintiff estates' Title III claims vested in the Personal Representative and/or that the claims

9

are barred because they were acquired by the Plaintiff estates after March 12, 1996 and (ii) denying Defendants' motions to dismiss on those two grounds.

Date: April 13, 2021

Respectfully submitted,

By: /s/ *Jared R. Butcher*
Jared R. Butcher
*Attorney-in-Charge*
CROSSCASTLE PLLC
DC Bar No. 986287
SD ID No. 3634996
1701 Pennsylvania Ave NW, Ste. 200
Washington, DC 20006
Telephone: (202) 960-5800
Facsimile: (612) 234-4766
jared.butcher@crosscastle.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2021, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/ *Jared R. Butcher*