UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HILDA M. CASTANEDO ESCALON, § <br> AS PERSONAL REPRESENTATIVE § <br> OF THE ESTATE OF HILDA CASTANEDO § <br> AND THE ESTATE OF EMMA DIAZ, § <br> § <br> *Plaintiffs,* § <br> § <br> § Civil Action No. 4:21-cv-00659 <br> § <br> v. § <br> § <br> TRAFIGURA TRADING, LLC, *et al.*, § <br> § <br> *Defendants.* § | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO RECONSIDER
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

The parties agree that a manifest error of law is grounds for reconsideration. Def. Opp. to Plf. Mot. to Reconsider, ECF No. 52 at 2 ("Opp."). That standard is satisfied because the Plaintiff Estates have legal ownership of their Title III claims, as demonstrated by Florida probate law and the orders of the Florida probate court recognizing those claims as part of the Estates. The Estates did not, and could not, engage in some sort of acquisition of those claims from the decedents, as Defendants contend, because an estate *is* the property of the decedent under Florida law, (Fla. Stat. § 731.201(14)), and therefore, it does not *acquire* the property of the decedent. Plaintiff Personal Representative is the only person authorized to pursue those claims on behalf of the Estates, as she has done here. *See* Fla. Stat. § 733.612(20). Defendants' opposition brief fails to rebut these well-settled principles of probate law.

*First,* Defendants invoke "Florida probate law," (Opp. at 4), but that law helps Plaintiffs, and not the Defendants, because it distinguishes between vesting of legal title and equitable title

to a decedent's property. ECF No. 51 at 4-5; *see also Rice v. Green*, 941 So.2d 1230, 1231 (Fla. Dist. Ct. App. 2006) (Although the beneficiary held "equitable title to the property," that property was still subject to the administration of the estate.). Defendants ignore this crucial distinction.[1] They do not explain how the Florida probate court could have recognized the Title III claims as assets of the Estates if the Estates held no legal title to them. *See also* ECF. No. 51 at 3 (explaining probate court orders). Nor do they explain how legal title could have vested in the Estates' beneficiary unless and until administration of the Estates was completed, including the prosecution of claims as authorized by Florida law. *See* Fla. Stat. § 733.612(20).

*Second*, Defendants offer an unsupported and unworkable gloss on Florida probate law, arguing that the decedents' wills caused an instantaneous transfer of their property (the Title III claims) to the beneficiary at the time of death. *See* Opp. at 4. If the probate system functioned this way, however, it would render useless the provisions in the probate code authorizing administration of a decedent's estate by the personal representative. Numerous administrative activities—such as liquidating assets, winding up contracts and business dealings, paying creditors, paying assessments and taxes, obtaining property insurance, pursuing claims, and employing professionals to assist with these activities—would be difficult, if not impossible, for the personal representative to perform if the estate was immediately divested of the decedent's property upon death. *See* Fla. Stat. § 733.612 (authorizing the personal representative to take over two dozen actions to administer the estate).

---

[1] One of Defendants' cases supports the proposition that an estate retains ownership of a decedent's property after death. *See Bryan v. Dethlefs*, 959 So. 2d 314, 318 (Fla. Dist. Ct. App. 2007) (stating that "[decedent's] death did not divest his estate of its interest in the assets of the Trust that remained to be distributed").

2

*Third*, Defendants' efforts to impugn Plaintiff's intentions should not be allowed to distract the focus from the core legal issues. Contrary to Defendants' mud-slinging, Plaintiffs' argument is not "newly discovered" or "a ruse" or an attempt "to manipulate the probate system." Opp. at 5. Plaintiffs previously argued that "Hilda's and Emma's trafficking claims were lawfully preserved in their Estates" and cited the probate court orders. ECF No. 28 at 10. There was nothing untoward about the creation or maintenance of the Estates to pursue Title III claims, since it was impossible to pursue the claims earlier due to the suspension of private actions under the HBA until 2019. *Id.* at 3. Nor was it improper to maintain the Estates and keep them open to pursue those claims, as evidenced by the fact that the probate court approved the course of action that Defendants now disparage. *See* ECF Nos. 52-4 & 52-6 (attaching orders); *see also* Fl. St. Prob. Rule 5.460(a) (permitting re-opening of the estate if "additional property of the decedent is discovered or if further administration of the estate is required for any other reason"). Defendants' self-serving footnote is long on hyperbole, short on substance, and bereft of civility—nothing more than a cheap-shot attempt to supplant the probate court's orders with their own biased preferences, while ignoring Plaintiffs' substantive arguments. *See* Opp. at 5 n.1.[2]

*Fourth*, Defendants incorrectly challenge "the authority of the Personal Representative to pursue" the Estates' Title III claims, (Opp. at 6), through convoluted and circular reasoning. They invoke "Title III's statutory acquisition date," (*id.* at 7), but their view of how the "acquisition date" applies here is dictated by their misinterpretation of Florida probate law and how it treats a

---

[2] The accusation of "artful abuse of the probate process," (Opp. at 7), is particularly rich, coming from Defendants that are enriching themselves to the tune of billions of dollars through the use of stolen property in Cuba, while refusing to compensate the claimholders and brazenly doing business with a state sponsor of terrorism. *See* State Sponsors of Terrorism, U.S. Dept. of State, at https://www.state.gov/state-sponsors-of-terrorism/. Defendants only care about process if they can manipulate it to shield their unlawful activities.

3

decedent's property vis-à-vis the estate. Defendants rely on their own misinterpretation of state probate law to support a misapplication of that law to determine who holds the legal title to the Title III claims and whether such title was "acquired" after the acquisition date. Defendants' faulty premise about Florida probate law makes their conclusion as to the Personal Representative's authority faulty as well.

*Fifth*, Defendants continue making unsubstantiated legal arguments—this time defending the *Fernandez* decision by doing nothing more than repeating *Fernandez's* incorrect reasoning. Plaintiff's already explained why *Fernandez* is wrong and should not have been relied on here. ECF No. 51 at 5-9. The U.S. Government's amicus brief in *Del Valle v. Trivago* offers no support for Defendants because it addresses whether a Title III claim can be inherited by another living person after the Title III acquisition date; it says nothing about Title III claims brought by estates of decedents who acquired their claims before the acquisition date.

*Finally*, the manifest injustice is real. The Personal Representative and her family were forced to flee their homes in Cuba when the Castro regime confiscated their mining business and other property. Decades later, Congress passed Title III to provide a remedy for the injustices inflicted and perpetuated by the Cuban government's partnership with foreign companies, like Defendants, to profit from trafficking in confiscated property. *See* 22 U.S.C. § 6081 (Congress's findings). Rather than "deny traffickers any profits from economically exploiting Castro's wrongful seizures" as Congress intended, the Order dismissing this case denies the "judicial remedy" that Congress sought to bestow on Castro's victims. *Id.* § 6081(11). When a state sponsor of terrorism and its allies win, and victims of trafficking lose, the injustice speaks for itself.

Date:  May 11, 2022                                       Respectfully submitted,

By: /s/ *Jared R. Butcher*
Jared R. Butcher
*Attorney-in-Charge*
CROSSCASTLE PLLC
DC Bar No. 986287
SD ID No. 3634996
1701 Pennsylvania Ave NW, Ste. 200
Washington, DC 20006
Telephone: (202) 960-5800
Facsimile: (612) 234-4766
jared.butcher@crosscastle.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2022, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/ *Jared R. Butcher*